## *Ex parte* CUDDY.

*(Circuit Court, S. D. California.  August 13, 1889.)*

HABEAS CORPUS—DENIAL BY SUPREME COURT ON APPEAL—RENEWAL OF APPLICATION.
Where a petitioner for a writ of *habeas corpus* appeals to the United States supreme court from a judgment of the circuit court denying his application, voluntarily omitting a material portion of his case, he cannot, after failing on the appeal upon the record presented, renew his application before another court or justice of the United States, upon the same record, with the addition of the matter thus omitted, without first having obtained leave for that purpose from the supreme court. The question is entirely different when subsequently occurring events have changed the situation of the petitioner so as in fact to present a new case for consideration.

Application of Thomas J. Cuddy to be Discharged from Imprisonment on a Writ of *Habeas Corpus*.

*J. A. Anderson*, for petitioner.

*George J. Denis*, U. S. Dist. Atty.

FIELD, Justice.    The petitioner applied to me some days ago in San Francisco for a writ of *habeas corpus*, alleging that he is unlawfully imprisoned by the marshal of the United States for the southern district of California, and the warden of the jail of Los Angeles county, contrary to the constitution and laws of the United States; that such imprisonment is had under and by virtue of a warrant of commitment based upon a judgment of the district court of the United States for the southern district of California, adjudging him guilty of contempt, and sentencing him to imprisonment in that jail for the period of six months.    An order was thereupon made that a writ issue, to be directed to the marshal, and made returnable before me at this place, Los Angeles, on the 10th instant. The petition sets forth the judgment of the district court, rendered on the 13th of February, 1889, upon which the writ of commitment was issued under which the petitioner is held.    It is as follows:

"Whereas, in the progress of the trial of the action of *The United States of America* v. *W. More Young*, on the 12th day of February, 1889, upon the examination of the term-trial juror Robert McGarvin as to his qualification to sit as a trial juror in the said action, the said McGarvin testified, among other things, in effect, that on the day previous he was approached by one Thomas J. Cuddy, with the object on Cuddy's part to influence his (McGarvin's) action as a juror in the said case in the event that he should be sworn to try the said action; and whereas, from the testimony, this court, on the said 12th day of February, 1889, entered an order directing the said Thomas J. Cuddy to show cause before this court, at the court-room thereof, at 10 o'clock on the 13th day of February, 1889, why he should not be adjudged guilty of a contempt of this court; and whereas, in response to the said citation, said Thomas J. Cuddy did, on the said 13th day of February, 1889, appear before the said court; and whereas, testimony was then and there introduced in respect to the matter both for and against him,—the court, having duly considered the testimony, does now find the fact to be that the said Thomas J. Cuddy did, upon the 11th day of February, 1889, approach the said Robert McGarvin, at the time being a term juror duly impaneled in this court, with a view to improperly influence the said McGarvin's action in the case of the United

States of America against the said Young in the event the said McGarvin should be sworn as a juror in said action. Now, it is here adjudged by the court that the said Thomas J. Cuddy did thereby commit a contempt of this court, for which contempt it is now here ordered and adjudged that the said Thomas J. Cuddy be imprisoned in the county jail of the county of Los Angeles for the period of six months from this date, and the marshal of this district will execute this judgment forthwith."

The petition sets forth the proceedings taken by the court, and alleges that the transaction which was the basis of the charge against the petitioner, and for which the judgment was rendered, took place on the 11th day of February, 1889, when the district court was not in session, and nearly a quarter of a mile distant from the court-house in which that court is held. He therefore claims that the district court had no jurisdiction to try and sentence him for the alleged contempt, because the act charged as such was committed at the time and place designated, and was not adjudged to have been done corruptly, or by threats or force. The purport of the objection is that the act charged as a contempt was not committed in the presence of the court, or so near thereto as to obstruct the administration of justice; and therefore did not present a case within the power of the court to punish summarily, under section 725 of the Revised Statutes, and therefore that the judgment was illegal and void. That section reads as follows:

"The said courts [of the United States] shall have power    *    *    *    to punish by fine or imprisonment, at the discretion of the court, contempts of their authority: provided, that such power to punish contempts shall not be construed to extend to any case except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice; the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of said courts."

The marshal returns the warrant of commitment under which he holds the prisoner. By consent of parties the record in the case of the petitioner before the district court and in the supreme court of the United States is also presented. By that record it appears that the petitioner, on the 9th day of April, 1889, applied to the district court for the southern district of California for a writ of *habeas corpus* in order that he might be discharged from the imprisonment now complained of, asserting, as now, that the same was illegal for the reason that the court had no jurisdiction to try and sentence him, because the matters set forth in the judgment do not constitute any contempt under section 725 of the Revised Statutes, and because the judgment was not founded upon proceedings in due course of law; that the district court, after due consideration, denied the application for a writ; that thereupon an appeal was taken from the judgment to the supreme court of the United States, where, after argument and due consideration, the judgment was affirmed. 131 U. S. 280, 9 Sup. Ct. Rep. 703. The additional matter set forth in the present application consists only of the testimony which was before the district court when the question of contempt charged against the petitioner was

considered, and which might have been contained in the record of the supreme court, and, if deemed important for the due consideration of the validity of the judgment of the district court, should have been thus presented. The finding and judgment of the district court do not state that the acts constituting the alleged contempt were done in the presence of the court, or so near thereto as to obstruct the administration of justice. The supreme court held that, if done in the presence of the court, "that is, in the place set apart for the use of the court, its officers, jurors, and witnesses, they were clearly a contempt, punishable as provided in section 725 of the Revised Statutes, by fine or imprisonment, at the discretion of the court, and without indictment;" but that, inasmuch as the district court possesses superior jurisdiction within the meaning of the familiar rule that the judgment of such courts cannot be attacked collaterally, it must be presumed that it acted rightly upon such a state of facts as authorized its judgment; that the want of jurisdiction not appearing affirmatively, it must be presumed that the evidence made a case within its jurisdiction to punish the petitioner in the mode prescribed. The judgment of the district court was therefore affirmed.

The petitioner, in the present application, as appears from what has already been said, supplies what was omitted in his record to the supreme court. At the outset the question is thus presented whether it is permissible for a party to appeal from a judgment denying his application, voluntarily omitting a material portion of his case, and, after invoking the judgment of the appellate court upon the record presented, and failing therein, to renew his application before another court or justice of the United States, without first having obtained leave for that purpose from the appellate court. Before passing upon this question some consideration should be given to the position of the district attorney as to the jurisdiction of the court to punish summarily as a contempt an act obstructing the administration of justice in pending cases, even if committed at a distance from the court-room. He contends, if I rightly understand him, that all the officers and parties necessarily attending or summoned to attend in pending cases in the courts of the United States as marshals, clerks, jurors, and witnesses "are so near thereto," that is, so connected therewith,—applying· the terms "so near thereto" as indicating relationship of subject, rather than relationship of place,—that misbehavior towards them, though they are distant at the time from the court-room, or during the temporary adjournment of the court, constitutes a contempt punishable under the statute. Certain it is that attempts to turn such officers or parties from the performance of their duty, in order to secure the selection of particular persons as jurors, or to bias the judgment of the jurors selected, or to influence witnesses to suppress or qualify their testimony, or to absent themselves from the court, or threats of violence, or the use of insulting language to them respecting, or to influence, their conduct, though uttered or done outside of the court-house, and at a distance from it, are as much an obstruction to the administration of justice as though uttered or done within its walls. Though I am not quite prepared to accept this position of the district attorney, it is entitled to grave consideration.

I do not wish to express an opinion upon it, as it is unnecessary to the disposition of the case, and for the further reason that the justices of the supreme court deemed it of sufficient importance to reserve their judgment upon it.

The statute also declares the disobedience or resistance by any person of any "lawful writ, process, order, rule, decree, or command" of the courts of the United States to be a contempt. It is the practice of the district courts of the United States to command all persons summoned and sworn as term-trial jurors to avoid speaking with others, and not to allow others to speak to them with respect to cases which may be tried before them. Such a command, if a standing rule of the court, or given, as usual, in its instruction to the jurors, when accepted, would bind all persons, jurors, parties, and others cognizant of it: and a disobedience of it would be a flagrant contempt. Nothing, indeed, can tend more to pollute the administration of justice than to allow tampering with jurors. Any attempts, however slight, to swerve them from the strict line of their duty, should be punished with the utmost rigor. Purity in the administration of justice could not otherwise be maintained, and such purity is the only safety of the people under a free and popular government. I suppose such a command was given by the district court in its instructions to the trial jurors of the term, to one of whom the improper approach was made which constitutes the contempt for which the petitioner was sentenced to be imprisoned; but, as no record is preserved of it, I cannot act upon the suggestion of the fact.

I return, therefore, to the question whether the petitioner can renew his application for a writ after the decision of the supreme court on his appeal to that tribunal, without first having obtained its leave. If he can renew it on another record, which may also be in some other particular defective, and so on indefinitely whenever he fails on appeal, it is plain that the writ may often become an instrument of oppression, instead of a means of relieving one from an unjust and illegal imprisonment. The writ of *habeas corpus*, it is true, is the writ of freedom, and is so highly esteemed that by the common law of England applications can be made for its issue by one illegally restrained of his liberty to every justice of the kingdom having the right to grant such writs. No appeal or writ of error was allowed there from a judgment refusing a writ of *habeas corpus;* nor, indeed, could there have been any occasion for such an appeal or writ of error, as a renewed application could be made to every other justice of the realm. The doctrine of *res judicata* was not held applicable to a decision of one court or justice thereon; the entire judicial power of the country could thus be exhausted. *Ex parte Kaine*, 3 Blatchf. 5, and cases there cited. The same doctrine formerly prevailed in the several states of the Union, and, in the absence of statutory provisions, is the doctrine prevailing now. In many instances great abuses have attended this privilege, which have led in some of the states to legislation on the subject. And, in the absence of such legislation, while the doctrine of *res judicata* does not apply, it is held that the officers before whom the second application is made may take into consideration the fact that a previous application

had been made to another officer and refused; and in some instances that fact may justify a refusal of the second. The action of the court or justice on the second application will naturally be affected to some degree by the character of the court or officer to whom the first application was made, and the fullness of the consideration given to it. I hardly think that an ordinary justice would feel like disregarding and setting aside the judgment of a magistrate like Chief Justice MARSHALL, or Chief Justice TANEY, who had refused an application for a writ after full consideration. In some states an exception is also ingrafted upon the general doctrine where a writ is issued to determine, as between husband and wife, which of the two shall have the custody of their children. In what I have said I refer, of course, to cases where a second application is made upon the same facts presented, or which might have been presented, on the first. The question is entirely different when subsequent occurring events have changed the situation of the petitioner so as in fact to present a new case for consideration. In the present application there are no new facts which did not exist when the first was presented. And under the law of the United States an appeal is allowed to the supreme court where the writ is refused,—a provision which would seem to have been adopted to prevent a second application upon the same facts which were or might have been presented in the first instance. I am of the opinion that in such a case a second application should not be heard, except where the judgment of affirmance by the supreme court is rendered without prejudice to, or with leave to make a new application by, the petitioner. He need not have appealed from the refusal of the district court; he could have applied to the circuit judge, and also, afterwards, to the circuit justice. He did not think proper to pursue that course, but took his appeal to the supreme court, and during the argument there no suggestion was made that the record did not fully disclose the petitioner's case; and when that tribunal decided the case, no request was made for permission to renew the application; and now the imprisonment of the petitioner under the judgment affirmed by that court is drawing to a close; it will expire with this day. This writ must therefore be dismissed, and the prisoner remanded; and it is so ordered.