## IN THE MATTER OF THE APPLICATION OF TOME TANNO FOR A WRIT OF HABEAS CORPUS (SECOND PETITION).

### April 23, 1915.

1. *Aliens—Immigration—Denial of landing—Appeal—Authority to determine:* Whoever challenges the authority of an Acting Secretary of Labor to determine an appeal from a decision of an immigration

board denying the landing·of an alien, assumes the burden of proving it clearly.

2. *Habeas corpus—Accident and mistake as grounds for—Pleading:* A petition for writ of habeas corpus which alleges as one of its grounds the failure through accident or mistake to perfect an appeal in a former similar proceeding before the same court, must state fully and explicitly the manner in which the accident or mistake occurred.

3. *Same—Pleading—Sham or frivolous allegations:* Sham or frivolous allegations are to be discountenanced and especially in an extraordinary proceeding such as habeas corpus.

4. *Same—Same—Verification:* It should appear distinctly either from the verification or from the verification taken in connection with the petition for the writ, what allegations are made on personal knowledge and what on information and belief.

5. *Same—Successive applications for writ:* Where appeals have been provided for in habeas corpus cases, it has come to be the rule, either as one of law or practice, that a judgment remanding the petitioner is conclusive on a subsequent application for the writ, the petitioner being left to his remedy by appeal.

6. *Same—Same—Necessity of subsequently occurring events as new grounds:* A second application for writ of habeas corpus will not be considered, as a general rule, unless there are as a basis for the writ new facts which did not exist when the first application was presented.

*Habeas corpus:* On traverse to return to order to show cause.

*J. Lightfoot* for petitioner.
*Jeff McCarn,* U. S. District Attorney, for respondent.

CLEMONS, J. The language of this court in its opinion in the case of *Denjiro Yokoda,* post, decided December 29, 1914,—referring to a decision of Judge Dooling of California,—would I think apply here, to the ground of this petition most strongly relied upon, that the petitioner, appealing to the Secretary of Labor from a decision of an immigration board of special inquiry, had not had his appeal determined by a competent officer, but by a so-called "Acting Secretary," unauthorized to act. Also, the case of *Tang Tun v. Edsell,* 223 U. S. 673, would have some appli-

cation. In the latter case it was held that the decision on appeal was none the less the decision of the Secretary of Commerce and Labor, because communicated by the Assistant Secretary by telegram. [1] The part of the *Denjiro Yokoda* decision to which I refer, in which Judge Dooling's ruling is adopted, reads: "Moreover, . . . 'whoever challenges his [the Acting Secretary's] right to act assumes the burden of proving it clearly.'" *Ex parte Tsuie Chee,* 218 Fed. 256, 257. Regarding this telegram, signed merely "Daniel J. Keefe" and communicating to the immigration inspector at Honolulu, the fact that the alien was to be deported, and upon which counsel relies as an implication of the appeal's having been heard by an unauthorized person, it may be enough to say that under the presumption of right-acting, of regularity, it is to be presumed here that the telegram emanated from the Secretary or from some one authorized to act. In line with the principle and spirit of Judge Dooling's ruling the burden upon the petitioner has not been sustained. The telegram may here be noted; it is in code, meaning: "Secretary (or Assistant Secretary, or Acting Secretary) has affirmed excluding decision Board (or your excluding decision) [referring to the Board of Special Inquiry] case alien(s) named and directs deportation. (Signed) Daniel J. Keefe."

[2] Here the petitioner swore to a fact, as to the presence of the Secretary of Labor, and his consequent duty to act in the appeal, of which she and, it must be assumed with greater reason, her attorney also, were not prepared to offer the slightest proof,—for the mere unsupported circumstance of the telegram's having been signed "Daniel J. Keefe" is insufficient. The other grounds of this second petition are virtually mere repetitions of those already determined in this court's decision of October 18, 1913, in -another habeas corpus proceeding (No. 55) ante, pp. 266, 271, brought by the same petitioner in her own behalf and attempted to be appealed but the appeal never perfected.

And her very failure to perfect an appeal is made a ground of this second petition: "That your petitioner noted an appeal . . . from the order . . . discharging said writ, but through accident and mistake the said appeal was not perfected." The suggestion is strong of want of good faith in respect to this allegation: this extraordinary ground is not even supported by any statement, as the case called for, of facts constituting the "accident and mistake." See Fletcher's Equity Pleading and Practice, sec. 95, reading:

"When a complainant in equity seeks relief from the effects or results of some accident or mistake, he should state in his bill, fully and explicitly, the circumstances, so as to present a clear picture of the particulars of how the complainant was misled, of the character and causes of the accident or mistake, and how it occurred."

"It is too clear for argument that it [a bill of complaint "rest(ing) on the ground of . . . mistake"] should set out . . . the manner in which the mistake occurred." *United States v. Atherton,* 102 U. S. 372, 374.

In the course of this proceeding I have expressed some disapproval not only of the flimsy grounds of the petition but of the bringing of this second proceeding at all. In justification counsel cites the following from 21 Cyc. 350:

"A decision on a writ of habeas corpus remanding the prisoner is not as a general rule in the absence of statute conclusive on a subsequent application for the writ; but in some of the states the decision is conclusive as to all points presented or which might have been presented on the first application."

[3] But this, unfortunately, is no authority for sham or frivolous allegations or for allegations which are not properly made (see Fletcher, Eq. Pl. & Pr., supra) or not properly verified, or which neither attorney nor client is prepared to support by proof. We might concede the soundness of the principle above quoted from the encyclopaedia, yet courts cannot countenance such practices by those who

under the court's license are its "officers." In other words, attorneys are officers of the court first, and secondarily representatives of their clients' interests: they are, like the courts themselves, instruments in the administration of justice, virtually a part of the judiciary branch of our government under the Constitution,—and in the administration of justice "within the bounds of the law." See Canons of Professional Ethics, Am. Bar Assn., preamble and Canon 15.

[4] The matter of proper verification of pleadings, above adverted to, deserves just a word in passing; for this is an abused field of practice. The allegation of want of authority of Mr. Keefe is made directly and positively, though the verification affidavit is as to the truth of all matters except those alleged on information and belief, and as to belief in the truth of such matters. The practice of alleging things positively, as is done here throughout, and then endeavoring to avoid the responsibility of such allegations by a verification such as above, is practice to which no "officer of the court" should be a party. The prevalence of this practice by members of the bar whose integrity is beyond question, is surprising.

"If a pleading shows distinctly what allegations are made on personal knowledge and what on information and belief, it is sufficient for the verification to state that the pleading is true, of plaintiff's own knowledge, except as to those matters stated on information and belief, and as to these the affiant believes it to be true. But this form of affidavit is not sufficient where the pleading does not make this distinction." 31 Cyc. 542, and note 44. See *Phifer v. Ins. Co.,* 31 S. E. 716 (No. Car.) under statute requiring that "the verification must be to the effect that the same is true to the knowledge of the person making it, except as to those matters stated on information and belief, and as to those matters he believes it to be true."

[5] [6] But to get back now to the above-quoted statement of the encyclopaedia, relied on by counsel in support of his contention that repeated petitions may be brought in the same court. An examination of the cases

cited in support of the text compels the opinion that this quotation is misleading. In the light of the cases cited in the notes, the text should be modified to state a view, express or implied, or nearly all of the courts, and at least the later cases of the State and Federal courts, that may be gathered from the following language of Circuit Judge Putnam in the matter of *Ex parte Moebus,* 148 Fed. 39, 40-41:

"The petitioner made separate applications to the United States district judge for the district of New Hampshire and to the justice of the Supreme Court of the United States assigned to this circuit, each of which applications was denied. At common law, it was settled that a refusal by any judge to grant a writ of habeas corpus, or a refusal of any judge to discharge from custody a petitioner by, or in behalf of, whom such a writ has been granted, did not constitute res judicata, but that the petitioner was at liberty to apply to any other judge, and so on until the whole series of judges had been exhausted. It is, however, commonly understood that *the rule is practically otherwise in those jurisdictions where statutory rights of appeal, or writs of error, have been granted with reference to such proceedings,* and that, either as a rule of law or as a practical rule of administration, no judge would allow a writ when some other judge has refused it; but that any subsequent judge would remit the applicant to his remedy by appeal, or writ of error, unless some substantial change in the circumstances had intervened. In the present case, there has been no such change of circumstances, and, therefore, it may well be that we should have refused to consider this application at all, and should hold the applicant to his remedy by appeal under the statute, with the consequent further holding that, if the statutory time for an appeal had expired, the applicant had lost his rights if he had any. As, however, the petitioner has now for the first time applied to us formally, we have concluded to allow him to complete the circle made up of the justice of the Supreme Court assigned for this circuit, the district judge for the district of New Hampshire, and myself as the circuit judge who ordinarily attends to such matters in that district as come before the circuit judges. We do this more particularly in order that the petitioner may take out his appeal,

if he desires so to do, but with the express statement that no further applications of the character now before us will be entertained by us."

The language of Mr. Justice Field in *Ex parte Cuddy,* 40 Fed. 62, 64, 65-66, may also be considered, as showing a development away from a view perhaps necessary at common law, but no longer necessary under modern provisions for appeals in habeas corpus cases:

"At the outset the question is thus presented whether it is permissible for a party to appeal from a judgment denying his application (for a writ of habeas corpus), voluntarily omitting a material portion of his case, and, after invoking the judgment of the appellate court upon the record presented, and failing therein to renew his application before another court or justice of the United States, without first having obtained leave for that purpose from the appellate court. Before passing upon this question some consideration should be given to" (another question) . . .

"I return, therefore, to the question whether the petitioner can renew his application for a writ after the decision of the supreme court on his appeal to that tribunal, without first having obtained its leave. If he can renew it on another record, which may also be in some other particular defective, and so on indefinitely whenever he fails on appeal, it is plain that the writ may often become an instrument of oppression, instead of a means of relieving one from an unjust and illegal imprisonment. The writ of habeas corpus, it is true, is the writ of freedom, and is so highly esteemed that by the common law of England applications can be made for its issue by one illegally restrained of his liberty to every justice of the kingdom having the right to grant such writs. No appeal or writ or error was allowed there from a judgment refusing a writ of habeas corpus; nor, indeed, could there have been any occasion for such an appeal or writ or error, as a renewed application could be made to every other justice of the realm. The doctrine of res judicata was not held applicable to a decision of one court or justice thereon; the entire judicial power of the country could thus be exhausted. *Ex parte Kaine,* 3 Blatchf. 5, and cases there cited. The same doctrine formerly prevailed in the several states of the

Union, and, in the absence of statutory provisions, is the doctrine prevailing now. In many instances great abuses have attended this privilege, which have led in some of the states to legislation on the subject. And, in the absence of such legislation, while the doctrine of res judicata does not apply, it is held that the officers before whom the second application is made may take into consideration the fact that a previous application had been made to another officer and refused; and in some instances that fact may justify a refusal of the second. The action of the court or justice on the second application will naturally be affected to some degree by the character of the court or officer to whom the first application was made, and the fullness of the consideration given to it. I hardly think that an ordinary justice would feel like disregarding and setting aside the judgment of a magistrate like Chief Justice Marshall, or Chief Justice Taney, who had refused an application for a writ after full consideration. In some states an exception is also ingrafted upon the general doctrine where a writ is issued to determine, as between husband and wife, which of the two shall have the custody of their children. In what I have said I refer, of course, to cases where a second application is made upon the same facts presented, or which might have been presented, on the first. The question is entirely different when *subsequent occurring events* have changed the situation of the petitioner so as in fact to present a new case for consideration. *In the present application there are no new facts which did not exist when the first was presented.* And under the law of the United States an appeal is allowed to the supreme court where the writ is refused,—a provision which would seem to have been adopted to prevent a second application upon the same facts which were or might have been presented in the first instance. I am of the opinion that in such a case a second application should not be heard, except where the judgment or affirmance by the supreme court is rendered without prejudice to, or with leave to make a new application by, the petitioner. He need not have appealed from the refusal of the district court; he could have applied to the circuit judge, and also, afterwards, to the circuit justice. He did not think proper to pursue that course, but took his appeal to the supreme court, and during the argu-

ment there no suggestion was made that the record did not fully disclose the petitioner's case; and when that tribunal decided the case, no request was made for permission to renew the application; and now the imprisonment of the petitioner under the judgment affirmed by that court is drawing to a close; it will expire with this day. This writ must therefore be dismissed."

Also, the dissenting opinion of Chief Justice Gilfillan in *In re Snell,* 16 N. W. 692, 694 (Minn.), expresses an enlightened revolt against a common-law rule, burdensome and not called for under present conditions:

"Notwithstanding some dicta in England, and some decisions in America following them, I think, when a party has been heard on habeas corpus, the decision is, until reversed, res adjudicata upon his right to a discharge on the facts then existing. There may be a reason for the contrary rule when no review can be had, but there is none in this state, when the party may always have the decision of the court of last resort by appeal, where the writ is not heard in the first instance in this court, or by certiorari if no appeal is given. If the decision be not conclusive, then the party may, as often as it is against him, even though it be the solemn decision of this court, apply again and again, either to the same court or officer rendering it, or to any other court or officer having authority to issue the writ; and upon each application, notwithstanding repeated decisions even by the same court or officer, the writ must issue."

And the following language of Circuit Justice Nelson in *Ex parte Kaine,* 14 Fed. Cas. 78, 79, No. 7,597, 3 Blatchf. 1, a case often cited for the general proposition of the propriety of the issuance of successive writs, indicates that no general rule contemplates the repeated resort to the same court or the same judge:

"According to that system of laws [common law] so guarded is it in favor of the liberty of the subject, the decision of one court or magistrate, upon the return to the writ, refusing to discharge the prisoner, is no bar to the issuing of a second or third or more writs, by any *other* court or magistrate having jurisdiction of the case; and

that such court or magistrate may remand or discharge the prisoner, in the exercise of an independent judgment upon the same matters. *Ex parte Partington,* 13 Mees. & W. 679; *Canadian Prisoner's Case,* 5 Mees. & W. 32, 47; *The King v. Suddis,* 1 East, 306, 314; *Burdett v. Abbott,* 14 East, 91; *Leonard Watson's Case,* 9 Adol. & E. 731."

English cases cited by the encyclopaedia, supra, also cited in greater number by Church on Habeas Corpus, 2d ed., sec. 386, are far from supporting the broad propositions laid down by these works. Most of the cases cited by Church and by the encyclopaedia are on another subject entirely, viz., as to the want of remedy by writ of error or appeal to review a judgment denying or discharging the writ of habeas corpus; though such cases are pertinent in this way: they emphasize the old conditions which justified then a practice very different from that by which we should be governed now. A later section of Church's book indicates a development of the law along different lines: Id., sec. 389 and notes.

Statutes in same States have provided that a party can not obtain the writ a second time after a judgment remanding him has been affirmed on appeal, see *Hibler v. State,* 43 Tex., 197; "but even where no statute exists, a court or judge will not ordinarily in such case discharge a prisoner on habeas corpus, unless events have subsequently occurred which have so changed the situation of the petitioner as in fact to present a new case for consideration." Church, Hab. Corp., 2d ed., sec. 389, note at pages 580-581, citing *In re Cuddy,* supra. Therefore, where a party has an appeal, as here, but fails to take advantage of it, the logical result would be the same. The attitude of the Chief Justice in the case of *Hibler v. State,* supra, at page 204, as to the dangers of abuse of the privilege of this extraordinary writ, is pertinent:

"Any undue means resorted to for the purpose of thwarting or preventing the due execution of this duty of the State

are equally to be reprehended. This may be done by abusing and perverting the privileges of the writ of habeas corpus as well as by other means. This is a great writ of liberty, by being left unshackeled with forms and conditions in the mode of obtaining it. Therefore it can easily be obtained where there is no foundation for it in fact or in law.

"This would be an abuse of the privilege which, if frequently resorted to, might make it necessary to impose such limitations and restrictions upon the granting of it as would materially impair its efficiency. It is a privilege too dear to freedom to be endangered by intentional abuse of it by those who are connected with the administration of the laws. So it has been appreciated and acted on in times past, and, it is to be hoped, will continue to be in future.

"These remarks are made to induce caution in the exercise of this high privilege, and a conscientious resort to it only to accomplish its legitimate purposes."

I regret that press of other important duties forbids my treating the question last discussed more thoroughly and in a more orderly manner; but enough has been said to suggest that considerations applying under the common law, when no appeal lay in habeas corpus cases, have no application to conditions long existing everywhere in this country, or certainly in the Federal courts, under which the petitioner has an appeal. *Cessante ratione legis, cessat ipsa lex.* The principle and spirit of the law of res adjudicata has now, therefore, an application to such cases which it did not have before.

The constitutional questions of want of counsel, etc., have been determined in numerous decisions of this court adversely to the petitioner, and indeed, were covered by the court's ruling in the former petition (Case No. 55) in which the broad question of want of a fair hearing was raised. See, also, *In re Matsumoto*, post.

Let the order to show cause be discharged and the petition be dismissed.