### In re KOPEL.

(District Court, S. D. New York. October 10, 1906.)

**1. HABEAS CORPUS—SUCCESSIVE APPLICATIONS FOR WRIT.**

The doctrine of res judicata does not apply in matters of habeas corpus, and, there being no federal statute limiting the common-law right of an applicant to petition successively every judge having authority in the premises, a federal court may entertain a petition, notwithstanding the denial of the same petition by a state court also having jurisdiction, although it is within the discretion of any court to prevent an abuse of the writ.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Habeas Corpus, § 121.]

**2. EXTRADITION—POWERS OF STATE.**

A state has no sovereign power to surrender fugitives found within its limits to another jurisdiction, and can grant extradition only under the federal Constitution and statutes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Extradition, § 28.]

**3. SAME—RETURN OF FUGITIVE TO PORTO RICO.**

Extradition from a state or territory of the United States to Porto Rico is not authorized by the statute relating to extradition to foreign countries (Rev. St. § 5270, as amended in 1900, c. 793, 31 Stat. 656 [U. S. Comp. St. 1901, p. 3591]), nor is Porto Rico a "territory" of the United States, within the meaning of Rev. St. § 5278 [U. S. Comp. St. 1901, p. 3597]; but said section is extended to Porto Rico by section 14 of the organic act of April 12, 1900 (31 Stat. c. 191, p. 80), which provides that "the statutory laws of the United States not locally inapplicable shall have the same force and effect in Porto Rico as in the United States"; and by virtue of such provision, and of that of section 17, giving the Governor of Porto Rico all the powers of Governors of the territories of the United States that are not locally inapplicable, such Governor has the power to issue a requisition for the return of a fugitive criminal by a state as fully as the Governor of a territory would have.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Extradition, § 29.]

On Habeas Corpus.

Alfred R. Page, for relator.

Wm. Travers Jerome, Dist. Atty., and Robert S. Johnstone, opposed.

HOUGH, District Judge. The relator is in the custody of the police of this city by virtue of a warrant issued by the Governor of New York, directing that Kopel be seized and delivered to an officer described in the warrant as being duly authorized to take and convey him to Porto Rico, there to be tried for an offense against the laws of that island. The warrant of the Governor of this state was issued in response to a requisition from the Governor of Porto Rico, and both executives have, in issuing and honoring the requisition in question, acted in assumed compliance with section 5278, Rev. St. [U. S. Comp.

St. 1901, p. 3597]. By his petition herein Kopel alleges that he is held in violation of the Constitution and laws of the United States, in that Porto Rico, not being a "territory," within the meaning of section 5278, the Governor of that island had no lawful right to issue his requisition, and the Governor of New York, therefore, no right to issue the warrant under which the relator is detained.

The learned District Attorney by the return to the writ first urges that a similar application, based upon the same facts, and tendering the same issue of law, has been decided adversely to the relator by a justice of the Supreme Court of this state, from whose decision no appeal seems to have been taken, if such appeal be permissible. While it is, I think, within the discretion of any court to prevent an abuse even of a writ of right and freedom, the doctrine of res adjudicata cannot yet be said to apply in matters of habeas corpus. Undoubtedly, the state court has jurisdiction in this matter as ample and complete as is possessed by the courts of the United States. Robb v. Connolly, 111 U. S. 639, 4 Sup. Ct. 544, 28 L. Ed. 542; Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544. There being, however, no federal statute limiting the common-law right of an applicant for habeas corpus to successively petition every judge having authority in the premises (Ex parte Cuddy [C. C.] 40 Fed. 65), without regard to the fate of his successive applications, and not being made aware of the grounds of the decision of the Supreme Court of New York by any opinion on file, I consider myself bound to dispose of the matter as an original application.

It is, however, further contended that the surrender of Kopel by the state of New York may be lawfully made, even if it be not explicitly warranted by federal statute, inasmuch as there exists in the sovereign state a reserve power to surrender fugitives found within its borders, not taken away by the provision of the federal Constitution (article 4, § 2, subd. 2), which merely obliges a state to do in some cases what it may do in any case. To me it appears obvious that this view of the power of extradition is opposed to public policy, and destructive of national homogeneity, as tending to produce possible, if not probable, agreements, or practices equivalent thereto, between some states to the exclusion of others. Nor is the view contended for consistent with the judgment in People ex rel. Corkran v. Hyatt, 172 N. Y. 182, 64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706. In that case Judge Cullen declared that:

"No person can or should be extradited from one state to another unless the case falls within the constitutional provision, and that the power which independent nations have to surrender criminals to other nations as a matter of favor or comity is not possessed by the states."

This decision of the Court of Appeals of New York was affirmed as Hyatt v. Corkran, 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657, and in terms that in my opinion make Judge Cullen's remarks the supreme law of the land, and overrule the decisions in Matter of Fetter, 23 N. J. Law, 315, 57 Am. Dec. 382, and State v. Hall, 115 N. C. 818, 20 S. E. 729, 28 L. R. A. 289, 44 Am. St. Rep. 501.

It remains, therefore, to consider whether the terms of section 5278 are sufficiently broad to cover the extradition of a criminal from a

state of the Union to Porto Rico. It may be observed that, if this statute does not apply, none other does. Obviously, no treaty can be applicable; for, whatever may be the political status of Porto Rico, it is not a foreign land, as by the ratification of the treaty of Paris it became "territory of the United States, although not an organized territory in the technical sense of the word." De Lima v. Bidwell, 182 U. S. 196, 21 Sup. Ct. 743, 45 L. Ed. 1041. Nor does the amendment of June 6, 1900 (chapter 793, 31 Stat. 656), to section 5270 [U. S. Comp. St. 1901, p. 3591] apply, for the same reason, viz., that Porto Rico is not "foreign country or territory." Nor does section 1014, Rev. St. [U. S. Comp. St. 1901, p. 716] apply to the case in hand, because the relator is not charged with any "crime or offense against the United States," but with an offense against the statutes of the island of Porto Rico; or, in the language of section 16 of the organic law for Porto Rico (Act April 12, 1900, c. 191, 31 Stat. 77), he is the subject of a criminal prosecution by "the people of Porto Rico." Nor is there any special statute regulating extradition between the states and territories of the Union and Porto Rico, such as exists in the case of the Philippine Islands, where by the act of February 9, 1903 (chapter 529, 32 Stat. 806 [U. S. Comp. St. Supp. 1905, p. 164]), it is declared that the Philippine Islands "shall be deemed a territory," within the meaning of sections 5278 and 5279 of the Revised Statutes. It must, I think, be admitted that Porto Rico is not a "territory" of the United States, and that Congress has with entire consistency, and for obvious political reasons, refused to describe it by that technical term. Territories "have reference exclusively to that system of organized governments long existing within the United States by which certain regions of the country have been erected into civil governments." Their powers (executive, legislative, and judicial) are "conferred upon them by act of Congress, and their legislative acts are subject to the disapproval of the Congress of the United States; they are not in any sense independent governments, * * * yet they exercise nearly all the powers of governments under what are generally called organic acts, passed by Congress, conferring such powers on them." This class of governments has been "long known by the name of territories." In re Lane, 135 U. S. 447, 10 Sup. Ct. 760, 34 L. Ed. 219. More briefly, a "territory" has been defined as an "inchoate state." Ex parte Morgan (D. C.) 20 Fed. 305. Porto Rico has thus far been consistently kept in a condition of vassalage; it is neither a territory in esse nor a state in posse. Yet the various statutes relating to this island have conferred upon its inhabitants a government with all the powers and all the privileges of a technical territorial government; from the privileges of national citizenship only have the inhabitants of the island been debarred. Inasmuch as the federal Constitution does not apply to territorial acquisitions of the United States, except as extended thereto by act of Congress, it is obviously within the power of the nation to organize "territory of the United States" into any sort or kind of "territory" that Congress may desire. In Porto Rico the act of April 12, 1900 (chapter 191, 31 Stat. 77), and its amendments, have provided the substance of a territorial government. The executive, legislative, and judicial governmental departments are

established upon lines familiar to every student of American Constitutions. An elective commissioner, who substantially answers to a territorial delegate, represents the island at Washington. Section 39. It is entitled to a cadet at the Military Academy (Act March 3, 1903, c. 995, 32 Stat. 1011 [U. S. Comp. St. Supp. 1905, p. 202]), a midshipman at the Naval Academy (Act March 3, 1903, c. 1010, 32 Stat. 1198 [U. S. Comp. St. Supp. 1905, p. 220]), and the citizens of Porto Rico are sufficiently near of kin to the citizens of the United States to enlist in the national service (Act March 2, 1903, c. 975, 32 Stat. 934 [U. S. Comp. St. Supp. 1905, p. 174]).

Considering, therefore, what appears to me the obvious congressional intent of erecting in Porto Rico a government territorial in substance, but for political reasons called by a different name, the real inquiry to be made in this litigation is not the political status of the island, but the powers conferred upon the executive thereof with respect to the statutes of the United States now under consideration.

Section 14 of the organic act of April 12, 1900 (chapter 191, 31 Stat. 80), provides:

"That the statutory laws of the United States not locally inapplicable shall have the same force and effect in Porto Rico as in the United States."

Section 17 (31 Stat. 81) thereof requires:

"That the Governor of Porto Rico [who has issued the requisition herein] shall at all times faithfully execute the laws, and he shall in that behalf have all the powers of Governors of the territories of the United States that are not locally inapplicable."

It has not been asserted that section 5278, Rev. St., is locally inapplicable to Porto Rico. To allege that the only existing law under which a Porto Rican fugitive from justice can be returned thereto from the United States is "locally inapplicable" would be making a jest of justice. If the Governor of Porto Rico has under its organic act the power of a territorial Governor under the laws of the United States not locally inapplicable to Porto Rico, then he must have the power to issue a requisition for the return of a fugitive criminal as fully as a territorial Governor would have that power. The only power so to do is found in section 5278, and, that statute not being locally inapplicable to the island, it is my opinion that the requisition in question was lawfully issued, and if it was so lawfully issued, it follows that it was lawfully obeyed. To me the passage of the act of February 9, 1903, supra, regarding the Philippine Islands, is strong confirmation of this view. An examination of the statutes establishing government in the Philippines reveals no such formation of a government territorial in substance as I find in the legislation regarding Porto Rico. It was considered necessary to declare that for the sole purpose of extradition the Philippine Islands should be "deemed a territory." It was not necessary to make a similar declaration in respect of Porto Rico, for the Governor of that island had already been given substantially the powers "of Governors of the territories of the United States," and such powers include the right which has been questioned in this proceeding.

The writ is discharged, and the prisoner remanded.