## SALINGER, JR. *v.* LOISEL, UNITED STATES MARSHAL FOR THE EASTERN DISTRICT OF LOUISIANA.

## SAME *v.* SAME.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF LOUISIANA.

## SALINGER, JR. *v.* UNITED STATES, AND LOISEL, AS UNITED STATES MARSHAL, EASTERN DISTRICT OF LOUISIANA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

Nos. 341, 342, 705. Argued January 14, 15, 1924.—Decided May 26, 1924.

1. Warrants of removal issued in triplicate are in legal effect but a single warrant, and defendant who had secured a *supersedeas* on appeal from an order refusing relief by *habeas corpus* from arrest under one, could not lawfully be arrested under another. P. 228.

2. Where an accused person, on being surrendered by his surety and instituting *habeas corpus* proceedings, is rearrested in removal proceedings, due practice requires that a test of the second confinement, involving only the same questions, be had by amendment of the existing petition in *habeas corpus;* and where a second petition is erroneously brought, the two should be consolidated and heard as one case, thus avoiding the confusion and expense of double appeals. P. 229.

3. The common-law doctrine of *res judicata* does not extend to a decision on *habeas corpus* refusing to discharge a prisoner. P. 230.

4. But, in the exercise of its sound, judicial discretion " to dispose of the party as law and justice may require," (Rev. Stats. § 761,) a federal court may base its refusal to discharge on a prior refusal; and, as a safeguard against abuse of the writ, the applicant in any case may be required to show whether he has made a prior application and, if so, what was done on it. *Id.*

5. Under the Sixth Amendment, an accused cannot be tried in one district under an indictment showing that the offense was committed in another district. P. 232.

6. Nor is there any authority for a removal to a district other than that in which the trial may constitutionally be had. P. 232.

7. Under § 215 of the Criminal Code, to knowingly cause a letter to be delivered by mail, in accordance with the direction thereon, for the purpose of executing a fraudulent scheme, is an offense separate from that of mailing the letter, or causing it to be mailed, for the same purpose; and, where the letter is so delivered as directed, the person who caused the mailing causes the delivery, at the place of delivery, and may be prosecuted in that district although he was not present there. P. 233.

8. Under Jud. Code, § 53, when a district contains several divisions, the trial (in the language of the statute, the " prosecution ") of an offense must be in the division where it was committed, unless the accused consents otherwise; but the indictment may lawfully be returned in another division of the same district. P. 235.

9. Resistance to removal having been unreasonably protracted, the Court directs immediate issuance of its mandate, with orders requiring that the accused under his bonds surrender himself within ten days to the marshal in the district of the removal proceeding or the district of the indictment. P. 238.

Nos. 341 and 342, affirmed.

295 Fed. 498 (No. 705,) reversed.

APPEALS from two orders of the District Court refusing release in *habeas corpus;* and certiorari to a judgment of the Circuit Court of Appeals affirming a like order made on a third application.

*Mr. B. I. Salinger,* with whom *Mr. St. Clair Adams* and *Mr. L. H. Salinger* were on the briefs, for appellant and petitioner.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for appellee and respondents.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

These three cases involve certain phases of a protracted resistance by B. I. Salinger, Jr., to an effort by the United

States to have him removed to the District of South Dakota to answer an indictment for a violation there of § 215 of the Criminal Code, which makes it a punishable offense to use the mail for the purpose of executing a scheme or artifice to defraud.

The indictment was returned in the District Court for the District of South Dakota when sitting in the western division, and the offense was charged as committed in the southern division; but the grand jury which returned the indictment had been impaneled from the body of the district regardless of the divisions and instructed to inquire into and make due presentment of offenses committed in any part of the district. After receiving the indictment the court, at the suggestion of the United States Attorney, remitted it to the southern division for trial and other proceedings. A bench warrant was issued for Salinger's arrest, and he appeared before a commissioner in Iowa and gave bond for his appearance in the southern division on the first day of the next term. But he failed to appear, and the bond was declared forfeited.

Later, Salinger being in New York City, a proceeding was begun before a commissioner there for his arrest and removal to South Dakota under § 1014 of the Revised Statutes. He was arrested, taken before the commissioner, and accorded a hearing. The indictment was produced; he admitted he was the person charged; and on the evidence presented the commissioner found there was probable cause and committed him to await the issue of a warrant of removal. He then sued out a writ of *habeas corpus* in the District Court for that district; but after a hearing the court discharged the writ, remanded him to the marshal's custody, and issued a warrant for his removal. On his appeal, that decision was reviewed and affirmed by the Circuit Court of Appeals for the Second Circuit. 288 Fed. 752. He made no attempt to obtain any other or further review. When the mandate of the

Circuit Court of Appeals went down, to avoid being removed in the custody of the marshal, he gave a bond for his appearance two weeks hence in South Dakota. Again he failed to appear, and that bond was declared forfeited.

After giving the bond in New York and before the day stipulated therein for his appearance in South Dakota, Salinger went to New Orleans, appeared with a representative of the surety in that bond before a commissioner there, and was surrendered by the surety's representative to the marshal of that district in the commissioner's presence. Such a surrender in a distant district may not have been in accord with § 1018 of the Revised Statutes and may not have discharged the surety, but nothing turns on that here. The surrender seems to have been made with Salinger's full consent; but, however made, it constituted no obstacle to further proceedings for his removal. The commissioner accordingly directed that he be held in the marshal's custody to await the institution of such a proceeding. He then sued out a writ of *habeas corpus* in the District Court at New Orleans and was admitted to bail pending a hearing on the writ.

In a few days—during which Salinger failed to appear in South Dakota as stipulated in the bond given in New York—a proceeding for his arrest and removal under § 1014 was begun before the commissioner in New Orleans. He was arrested, taken before the commissioner, and accorded a hearing. The indictment was produced; evidence was presented tending to show he was the person charged; and he gave testimony tending to show he was not in South Dakota at the times he was charged with unlawfully using the mail. On all the evidence the commissioner found the requisite identity and probable cause, and committed him to await the issue of a warrant for his removal. He then sued out another writ of *habeas corpus* in the District Court, and was admitted to bail pending a hearing on the writ.

On a hearing in the two cases all the proceedings in South Dakota, New York, the Circuit Court of Appeals for the Second Circuit, and New Orleans which have been recited herein were produced in evidence, and on consideration thereof the court discharged both writs of *habeas corpus,* remanded Salinger to the marshal's custody, and issued a warrant for his removal. Direct appeals to this Court in the two cases were then prayed by Salinger and allowed by the District Court, it being especially directed in both cases that the appeal operate as a supersedeas on Salinger's giving approved bail. The bail was given and approved. These cases are Nos. 341 and 342.

Notwithstanding the supersedeas so effected, Salinger was taken into custody by the marshal under the warrant of removal with a view to executing its command. He then sued out a third writ of *habeas corpus* in the District Court,—his petition therefor being like his earlier petitions, save as in it he additionally complained that his detention under the warrant of removal was in contravention of the supersedeas allowed on the appeals in Nos. 341 and 342. After a hearing the District Court discharged the writ of *habeas corpus* and remanded him to the marshal's custody for removal under the warrant. An appeal was taken to the Circuit Court of Appeals for the Fifth Circuit, where the decision was affirmed. 295 Fed. 498. The case is here on certiorari, 263 U. S. 683, and is No. 705. Bail in this case was allowed and given here when certiorari was granted.

In disposing of the additional ground of complaint advanced in No. 705 the Circuit Court of Appeals proceeded on the assumption that there were three distinct warrants of removal and that one of these was neither involved in the appeals in Nos. 341 and 342 nor covered by the supersedeas. But the assumption was not well founded. There was but one proceeding for removal before the

commissioner in New Orleans and it was based on the single indictment in South Dakota. There also was but one commitment for removal in that proceeding. The warrant of removal issued by the District Court was based expressly on that commitment; but for reasons not explained the warrant was issued in triplicate. In substance, form and date the three papers were identical. Taken either collectively or separately they embodied a single command, which was that the marshal " forthwith " remove Salinger to South Dakota and there deliver him to the proper authority to be dealt with under the indictment. To execute the command of one triplicate was to execute that of all. In legal effect therefore there was one warrant, not three. One was all that was sought, and no basis was laid for more. The obvious purpose of the supersedeas was to stay the execution of the command for removal pending the appeals to this Court in Nos. 341 and 342, and of course that purpose could not be thwarted by merely duplicating or triplicating the warrant embodying the command. It follows that the additional ground of complaint advanced in No. 705 was well taken. But, as that ground could be effective only during the life of the supersedeas in Nos. 341 and 342, it has no bearing on the decision to be given in them on the right to remove.

Before coming to the questions presented in those cases we think the procedure which was followed in them calls for comment. The first case was begun when Salinger was committed by the commissioner to await a proceeding for his removal. Later when such a proceeding was begun and the commissioner definitely committed him to await the issue of a warrant of removal, that change in the situation should have been shown in the first case by an appropriate amendment or supplement to the petition instead of being made the basis of a new and separate case. And when, in disregard of the propriety of taking that course,

the second case was begun, the two should have been con-
solidated and conducted as one. The parties were the
same and the cases presented a single controversy. Main-
taining them separately was productive of confusion and
led to two appeals to this Court, when had the right
course been taken one appeal plainly would have sufficed
and would have lessened by one half the printing and
other costs. As it is now, one record is largely a dupli-
cation of what appears in the other and both are exceed-
ingly confusing. The course that was taken should
not have been selected, nor should the court have per-
mitted it.

In Nos. 341 and 342 the right to arrest and remove in
virtue of the indictment was questioned on the same
grounds that were set up in the earlier case in New York,
where that right was upheld. Because of this situation,
counsel for the appellee invoke the doctrine of *res
judicata* and insist that the decision in the New York case
was a final adjudication of the right and is binding on all
other courts, including this Court. We are unable to go
so far. At common law the doctrine of *res judicata* did
not extend to a decision on *habeas corpus* refusing to dis-
charge the prisoner. The state courts generally have
accepted that rule where not modified by statute; the
lower federal courts usually have given effect to it; and
this Court has conformed to it and thereby sanctioned it,
although announcing no express decision on the point.
The cases of *Carter* v. *McClaughry,* 183 U. S. 365, 378,
and *Ex parte Spencer,* 228 U. S. 652, 658, are notable in-
stances. We regard the rule as well established in this
jurisdiction.

But it does not follow that a refusal to discharge on one
application is without bearing or weight when a later ap-
plication is being considered. In early times when a re-
fusal to discharge was not open to appellate review, courts
and judges were accustomed to exercise an independent

judgment on each successive application, regardless of the number. But when a right to an appellate review was given the reason for that practice ceased and the practice came to be materially changed,—just as when a right to a comprehensive review in criminal cases was given the scope of inquiry deemed admissible on *habeas corpus* came to be relatively narrowed.

The federal statute (§ 761, Rev. Stats.) does not lay down any specific rule on the subject, but directs the court " to dispose of the party as law and justice may require." A study of the cases will show that this has been construed as meaning that each application is to be disposed of in the exercise of a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought. Among the matters which may be considered, and even given controlling weight, are (a) the existence of another remedy, such as a right in ordinary course to an appellate review in the criminal case, and (b) a prior refusal to discharge on a like application. *Ex parte Royall,* 117 U. S. 241; *Ex parte Fonda,* 117 U. S. 516; *Ex parte Mirzan,* 119 U. S. 584; *Cook* v. *Hart,* 146 U. S. 183; *In re Frederich,* 149 U. S. 70; *New York* v. *Eno,* 155 U. S. 89; *In re Chapman,* 156 U. S. 211; *Riggins* v. *United States,* 199 U. S. 547; *In re Lincoln,* 202 U. S. 178; *Henry* v. *Henkel,* 235 U. S. 219; *Ex parte Cuddy,* 40 Fed. 62; *In re Simmons,* 45 Fed. 241; *Ex parte Moebus,* 148 Fed. 39; *In re Kopel,* 148 Fed. 505. The decision in the *Cuddy Case* was on a second application, and was given by Mr. Justice Field. While holding the doctrine of *res judicata* inapplicable, he said, " the officers before whom the second application is made may take into consideration the fact that a previous application has been made to another officer and refused; and in some instances that fact may justify a refusal of the second. The action of the court or justice on the second application will naturally be

affected to some degree by the character of the court or officer to whom the first application was made, and the fullness of the consideration given to it."

In practice the rules we here have outlined will accord to the writ of *habeas corpus* its recognized status as a privileged writ of freedom, and yet make against an abusive use of it. As a further safeguard against abuse the court, if not otherwise informed, may on receiving an application for the writ require the applicant to show whether he has made a prior application and, if so, what action was had on it.

Here the prior refusal to discharge was by a court of coördinate jurisdiction and was affirmed in a considered opinion by a Circuit Court of Appeals. Had the District Court disposed of the later applications on that ground, its discretion would have been well exercised and we should sustain its action without saying more. But its decision does not appear to have been put on that ground; and, as circumstances are disclosed which make it appropriate that we consider and pass on two of the objections urged against a removal, we turn to them.

Both objections go to the jurisdiction of the court before which it is proposed to take and try the accused. One is that under the Sixth Amendment to the Constitution there can be no trial in the District of South Dakota because the indictment shows that the offense charged was not committed in that district but in a district in Iowa, and the other that, even if the indictment be taken as charging an offense in the District of South Dakota, it shows that it was returned in a division of that district other than the one in which the offense was committed.

It must be conceded that under the Sixth Amendment to the Constitution the accused can not be tried in one district on an indictment showing that the offense was not committed in that district; and it also must be conceded that there is no authority for a removal to a dis-

trict other than one in which the Constitution permits the trial to be had. We proceed therefore to inquire whether it appears, as claimed, that the offense was not committed in the district to which removal is sought.

The material part of § 215 of the Criminal Code on which the indictment is based reads:

" Whoever, having devised or intending to devise any scheme or artifice to defraud, . . . shall, for the purpose of executing such scheme or artifice . . . place, or cause to be placed, any letter . . . in any post-office, . . . or authorized depository for mail matter, to be sent or delivered, . . . or shall knowingly cause to be delivered by mail according to the direction thereon . . . any such letter, . . . shall be fined not more than one thousand dollars, or imprisoned not more than five years, or both."

The indictment charges that the defendants, of whom Salinger is one, devised a scheme and artifice to defraud divers persons by means described, and thereafter, for the purpose and with the intent of executing their scheme and artifice, did unlawfully and knowingly " cause to be delivered by mail " according to the direction thereon, at Viborg within the southern division of the District of South Dakota, a certain letter directed to a named person at that place, the letter and the direction being particularly described. The indictment then adds, in an explanatory way (see *Horner* v. *United States,* 143 U. S. 207, 213), that on the day preceding the delivery the defendants had caused the letter to be placed in the mail at Sioux City, Iowa, for delivery at Viborg according to the direction thereon. There were other counts in the indictment but they need not be particularly noticed, for the one just described is a fair sample of all.

Section 215 is a reënactment, with changes, of an earlier statute which made it an offense for the deviser of a scheme or artifice to defraud to place or cause to be placed

in the mail any letter in furtherance thereof, but did not contain the clause making it also an offense for the deviser to cause such a letter " to be delivered by the mail according to the direction thereon." Under the original statute the offense was held to be complete when the letter was placed in the mail depository for transmission, and the place of the deposit was held to be the place of commission, regardless of whether or where the letter was delivered. The appellant insists that the introduction of the new clause into the statute as reënacted is not of material significance here. We are of a different opinion. That clause plainly provides for the punishment of the deviser of the scheme or artifice where he causes a letter in furtherance of it to be delivered by the mail according to the direction on the letter. This is done by way of enlarging the original definition of the offense, the clause dealing with the placing of such a letter in a mail depository being retained. Evidently Congress intended to make the statute more effective and to that end to change it so that, where the letter is delivered according to the direction, such wrongful use of the mail may be dealt with in the district of the delivery as well as in that of the deposit. A letter may be mailed without being delivered, but, if it be delivered according to the address, the person who causes the mailing causes the delivery. Not only so, but the place at which he causes the delivery is the place at which it is brought about in regular course by the agency which he uses for the purpose. *United States* v. *Kenofskey,* 243 U. S. 440, 443. Were the Government attempting to prosecute at both places, a question might arise as to whether it should be required to elect between them (see *Haas* v. *Henkel,* 216 U. S. 462, 474); but, as there is no such attempt here, that question need not be considered. The appellant relies on *United States* v. *Stever,* 222 U. S. 167, as showing that the offense was committed at the place of the deposit and not at that

of the delivery; but the case is not in point. It arose before the statute was changed. The indictment there was in two counts. One was based on the original statute and was expressly abandoned by the Government. The other was based on another statute relating to the use of the mail in promoting lotteries and other schemes of chance.

We conclude that there is no sound basis for the claim that the indictment shows that the offense was not committed in the district to which removal is sought. An effort was made to strengthen that claim by producing testimony tending to show that Salinger was not in that district at the time. But of that effort it suffices to say that the nature of the offense is such that he could have committed it, or have participated in its commission, even though he was not then in the district. *In re Palliser,* 136 U. S. 257; *Horner* v. *United States,* 143 U. S. 207, 213; *Burton* v. *United States,* 202 U. S. 344, 386.

The objection that the indictment was not returned in the division in which it charges the offense was committed, and therefore that jurisdiction could not be founded on it, is based on a provision of § 53 of the Judicial Code reading as follows:

"When a district contains more than one division, . . . all prosecutions for crimes or offenses shall be had within the division . . . where the same were committed, unless the court, or the judge thereof, upon application of the defendant, shall order the cause to be transferred for prosecution to another division of the district."

South Dakota constitutes a single judicial district with one District Court; but the district is divided into four divisions where sessions are held at times fixed by law, such sessions whether in one division or another being "successive terms of one and the same court." *Hollister* v. *United States,* 145 Fed. 773, 782. A like situation exists in many of the States.

Formerly special statutes applicable to particular districts indicated the division in which criminal proceedings should be had, but the statutes were not uniform. Some provided that crimes and offenses should be "indictable" and triable only in the division where committed, or that all criminal proceedings should "be brought" and had in such division. But the greater number, in varying terms, required that the trial be in that division, unless the accused consented to its being in another. In districts where the latter were in force, it was common to impanel a grand jury from the district at large, to charge such grand jury with the investigation and presentment of offenses committed in any part of the district, and when indictments were returned to remit them for trial and other proceedings to the divisions wherein the offenses were committed, save as the defendant assented to a disposal in another division. The practice is illustrated in *Logan v. United States,* 144 U. S. 263, 297, and *Rosencrans v. United States,* 165 U. S. 257. The general provision in § 53 here relied on superseded the special statutes. It obviously is less restrictive in its terms than some of them were; and the prevailing practice under it has been like that theretofore followed in districts where the less restrictive provisions were in force. See *Biggerstaff v. United States,* 260 Fed. 926; *United States v. Chennault,* 230 Fed. 942.

The contention is that the word "prosecution" in the general provision includes the finding and return of an indictment. That the word sometimes is used as including them must be conceded. But there are also relations in which it comprehends only the proceedings had after the indictment is returned. Here we think it is used with the latter signification. It appears twice in the provision, doubtless with the same meaning. The first time is in the clause directing that "all prosecutions" be had in the division where the offense was committed, and the second

is in the clause permitting the court or judge, at the instance of the defendant, to order " the cause to be transferred for prosecution " to another division.  The connection in which it appears the second time shows that it refers to the proceedings after the indictment is found and returned, that is to say, after there is a cause susceptible of being transferred.  Besides, had Congress intended to put an end to the prevailing practice of impaneling a grand jury for the entire district at a session in some division and of remitting the indictments to the several divisions in which the offenses were committed, unless the accused elected otherwise, it is but reasonable that that intention would have been expressed in apt terms, such as were used in some of the exceptional special statutes.  That practice was attended with real advantages which should not be lightly regarded as put aside.  In many divisions only one term is held in a year. If persons arrested and committed for offenses in those divisions were required to await the action of a grand jury impaneled there, periods of almost a year must elapse in many instances before a trial could be had or an opportunity given for entering a plea of guilty and receiving sentence.

In our opinion the real purpose of the provision, that which best comports with its terms when taken in the light of the circumstances in which it was enacted, is to require, where a district contains more than one division, that the trial be had in the division where the offense was committed, unless the accused consents to be tried in another.  The Circuit Court of Appeals so held in a well considered opinion in *Biggerstaff* v. *United States, supra.* The only decision the other way, of which we are advised, was by the District Court for the Eastern District of Louisiana in *United States* v. *Chennault, supra;* and that court receded from that decision in the cases now before us.

The appellant relies on *Post* v. *United States,* 161 U. S. 583, as making for the contrary conclusion. But it does not do so. The case turned on a special statute, now superseded, declaring that " all criminal proceedings " for offenses in the District of Minnesota " shall be brought, had and prosecuted " in the division in which the same were committed. The difference between that special direction and the general one now before us is so marked that further comment is not required.

Other objections to the removal are urged, but those we have discussed and overruled are all that can with any propriety be regarded as open to consideration on these appeals.

A survey of the records before us shows that the resistance to removal has been unreasonably protracted. The mandate in these cases will issue forthwith and will embody an order requiring, under the bail given on the appeals in Nos. 341 and 342 and under that given on the granting of the writ of certiorari in No. 705, that Salinger surrender himself into the custody of the marshal for the Eastern District of Louisiana, at New Orleans, within ten days from the day the mandate bears date preparatory to a removal under the warrant heretofore issued by the District Judge of that district; or, in the alternative, that he surrender himself within such ten days into the custody of the marshal for the District of South Dakota at some place within that district, to be dealt with according to law.

*Judgments in Nos. 341 and 342 affirmed.*
*Judgment in No. 705 reversed.*