## PRICE v. JOHNSTON.
### No. 11334.

Circuit Court of Appeals, Ninth Circuit.
May 5, 1947.

Writ of Certiorari Granted June 23, 1947.

See 67 S.Ct. 1757.

DENMAN and STEPHENS, Circuit Judges, dissenting.

———◆———

Homer C. Price, of Alcatraz, Cal., in pro per., for appellant.

Frank J. Hennessy, U. S. Atty., and Joseph Karesh, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, DENMAN, MATHEWS, STEPHENS, HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

This appeal challenges the discretionary power of the court to deny a habeas corpus petition because of an abusive use of the privilege of the writ through the filing of successive petitions presenting seriatim grounds at all times within the knowledge of the applicant. Panels of this court have repeatedly affirmed the existence of such authority,[1] but in view of the importance of the question and the possible bearing upon it of recent Supreme Court decisions the appeal has been set down for hearing before the full bench.

Appellant is serving a sentence of 65 years on a general verdict of guilty under an indictment charging violations of 12 U.S.C.A. §§ 588b(a) and (b) and 588c, relating to bank robbery and assault and kid-

---

[1] Swihart v. Johnston, 9 Cir., 150 F.2d 721; Garrison v. Johnston, 9 Cir., 151 F.2d 1011; Wilson v. Johnston, 9 Cir., 154 F.2d 111, cert. den. 328 U.S. 872, 66 S.Ct. 1366, 90 L.Ed. 1642.

napping incidental thereto. The present is his fourth petition for the writ, all of them having been presented to the United States district court for the northern district of California.[2] On appeal from the first refusal to discharge we affirmed the judgment, Price v. Johnston, 125 F.2d 806, certiorari denied 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750 and a like result was reached on appeal in the second proceeding, Price v. Johnston, 9 Cir., 144 F.2d 260. No appeal was taken from the denial of the third petition.

The instant petition, as originally filed, raised questions concerning the validity of the sentence and the giving of an instruction commenting on evidence of the commission of a collateral offense. Substantially the same questions, among others, had been raised in the district court in the proceeding on the second application.[3] Accordingly, if this were all, the judgment of dismissal would appropriately be subject to affirmance on the basis of the court's refusal to discharge in the second proceeding. Ex Parte Hawk, 321 U. S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572; Salinger v. Loisel, 265 U.S. 224, 230-232, 44 S.Ct. 519, 68 L.Ed. 989.[4] However, by way of amendment to his petition the appellant interposed a wholly new ground for discharge, namely, "that the government knowingly employed false testimony on the trial, to obtain conviction." The specific circumstances of this claim are not further developed in the petition or in the traverse to the warden's return,[5] but in his brief here the appellant has enlarged upon the point by stating that the United States attorney, in the course of the trial, "did take the one and only witness, Donner, that testified that there had been a crime committed, from the witness stand after he had testified that he could not see any guns or pistols during the robbery, to the district attorney's office, and talked about the evidence and put the witness Donner back on the witness stand to testify that he did see the pistols, and described them, when he could not do so at first." Since the general allegation may be supported by specific proof we treat this statement as though it had been incorporated in the petition, Hawk v. Olson, 326 U.S. 271, 273, 66 S.Ct. 116. So construing the petition, it remains to determine whether the court erred in refusing to inquire into the claim of the knowing employment of false testimony. Cf. Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. The court's refusal to inquire was concededly predicated on our holding in Swihart v. Johnston, supra [note 1], and cases therein cited.

The records in these several proceedings disclose that throughout his trial appellant was represented by counsel of his own choosing. And since he was himself present at all times he could hardly have been unaware of the described incident or of its implications, nor does he make any such

---

[2] The first petition was filed in June, 1940, the second in September, 1942, and the third in August, 1945.

[3] These points appear not to have been pressed on the appeal in that proceeding, and they are patently without merit.

[4] In Salinger v. Loisel, after noting that the common law doctrine of res judicata does not extend to a decision on habeas corpus refusing to discharge a prisoner, the Court said that a prior refusal is not without bearing or weight when a later application is being considered. "In early times," said the Court, "when a refusal to discharge was not open to appellate review, courts and judges were accustomed to exercise an independent judgment on each successive application, regardless of the number. But when a right to an appellate review was given, the reason for that practice ceased, and the practice came to be ma-

terially changed * * *." 265 U.S. pp. 230-231, 44 S.Ct. 521. In the Salinger case there had been a prior refusal to discharge by a court of coordinate jurisdiction and an affirmance of the judgment by the circuit court of appeals. The Supreme Court remarked that had the district court disposed of the immediate application on that ground "its discretion would have been well exercised, and we should sustain its action, without saying more." 265 U.S. p. 232, 44 S.Ct. 522.

[5] The court below issued an order to show cause upon the filing of the petition, and after the warden had made his return setting up the earlier proceedings, the petitioner filed a traverse. The court thereupon, without having issued the writ, discharged the show cause order and dismissed the petition.

claim. On the face of his showing it is apparent he knew as much about the misconduct at the time it is said to have occurred as he knows now. Yet no reason or excuse is attempted to be advanced for his failure to set it up in one or the other of his prior petitions.

The decision in Swihart v. Johnston, holding that such reservation of grounds amounts to an abusive use of the writ, announced no novel doctrine. That case and those which came after it proceeded upon the authority of Salinger v. Loisel, supra, and Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 525, 68 L.Ed. 999. In these latter decisions, handed down simultaneously, the Court elaborately considered certain principles applicable to habeas corpus. The Wong Doo case, involving a petition by a Chinese in custody under a deportation order, is closely analogous to the present. The applicant had presented an earlier petition in which the validity of the order was assailed on two grounds, one of which was that the hearing on which the deportation order rested was not adequate or fair but essentially arbitrary. In the hearing the petitioner had offered no proof in support of this ground, and the district court did not rule upon it, holding merely that the other ground asserted was not good. In his second petition the applicant relied entirely on the ground earlier asserted but not pressed, namely, that the hearing had been unfair. The district court held that the doctrine of res judicata applied and remanded the petitioner, the circuit court of appeals affirming. The Supreme Court held the doctrine inapplicable but nevertheless affirmed the judgment, saying that the situation was plainly one where "according to a sound judicial discretion, controlling weight must have been given to the prior refusal." It observed that the petitioner had full opportunity to offer proof of the ground in the hearing on his first petition and that good faith required that he produce the proof then. Said the Court: "To reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of habeas corpus. No reason for not presenting the proof at the outset is offered. It has not been embodied in the record, but what is said of it there and in the briefs shows that it was accessible all the time."

In none of the more recent decisions of the Supreme Court are the principles announced in Salinger v. Loisel or Wong Doo v. United States, supra, overruled or modified. Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302, and Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, reaffirm the rule there stated that the doctrine of res judicata is not applicable in habeas corpus cases, but neither decision casts doubt upon the power of the court, in the exercise of a sound discretion, to decline to consider repeated petitions where it appears that the privilege of the writ is being abused. Practical considerations as well as reason and justice support the exercise of such power. In an earlier opinion in the present proceeding, Price v. Johnston, 9 Cir., 159 F.2d 234, we noted the tendency of prison inmates in this circuit to multiply petitions, with the result that unnecessary and increasingly heavy burdens are thrown on the courts in districts where federal penitentiaries are located; and in Dorsey v. Gill, App.D.C., 148 F.2d 857, the court of appeals of the District of Columbia has amassed figures evidencing the occurrence of a like phenomenon in its jurisdiction. Our opinion last above cited comments on the dubious nature of the objectives that seem in many instances to inspire these recurring applications for the writ.

The command of the statute, 28 U.S.C.A. § 461, is that the courts and judges make such disposition of habeas corpus petitions "as law and justice require." A petitioner is entitled to an opportunity to prove his claim of unlawful imprisonment, Hawk v. Olson, supra, 326 U.S. 271 page 279, 66 S.Ct. 116, but good faith requires that he make fair use of the opportunity afforded. Where there have been repeated petitions with an apparent husbanding of grounds the onus may properly be cast on the applicant of satisfying the court that an abusive use is not being made of the writ. Conversely, no matter if there have been a multiplicity of petitions, grounds newly asserted and seemingly valid must be inquired into if circumstances appear or are fairly

shown to excuse the prior failure to assert them. It should be unnecessary to add that even in the absence of such a showing the court may issue the writ and proceed to inquire if in a particular case it is thought that the ends of justice dictate that course. We are not here concerned with a compulsive principle analogous to res judicata, nor with some empty formula to be applied without reflection or as a matter of course. We are speaking rather of a discretionary power resting in the conscience of the judge, to be exercised in light of the circumstances of the particular case and on grounds which square with reason and justice.

■ In this instance there was no abuse of discretion in the dismissal of the petition.

Judgment affirmed.

DENMAN, Circuit Judge (dissenting).

Under the pressure of the large number of habeas corpus petitions filed in this circuit, this decision establishes a principle hamstringing a wrongfully imprisoned man. It plainly makes it the law for this circuit that a man convicted on perjured testimony procured by a United States attorney, but who does not discover the facts until after he has filed a petition for the writ on another ground, must serve his sentence—here for 65 years.[1]

In so narrowing the relief afforded by the writ, this court is but following a continued line of decisions since the increase of such petitions in this court, in which the Supreme Court recently has reversed us. They are: Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Robinson v. Johnston, 316 U.S. 649, 62 S.Ct. 1301, 86 L.Ed. 1732; Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.

The ground of the petition of the appellant, kept from appearing before us, is properly stated in the court's opinion. It is, as there stated, that the prosecuting attorney "knowingly employed false testimony on the trial, to obtain the conviction" and that this false testimony was and was procured in the following manner, namely that the prosecuting attorney "did take the one and only witness, Donner, that testified that there had been a crime committed, from the witness stand after he had testified that he could not see any guns or pistols during the robbery, to the district attorney's office, and talked about the evidence and put the witness Donner back on the witness stand to testify that he did not see the pistols, and described them, when he could not do so at first."

The gravamen of the misconduct charged is not the fact that the witness changed his testimony but that the prosecuting attorney knowingly caused the witness to give the false testimony. All the accused and his attorney knew at the trial was that the single prosecuting witness changed his testimony. Obviously this in itself does not warrant a charge of fraud. That it was

---

[1] An ex parte hearing, in effect, on a habeas corpus appeal. The declared importance of this case is apparent, both as to the principle established and to Price under a 65-year sentence. Yet, regardless of this importance, neither Price, suing forma pauperis, nor any attorney appointed for him, participated in the hearing en banc. This is despite our Rule 22 (1), which has the force of law, that "the appellant shall be entitled to open and conclude the argument of his case."

In this court's opinion, filed on January 8, 1947, 159 F.2d 234, to which Judge Orr and the writer dissented, it is held, ignoring our rule and the underlying justice of having Price or some attorney in his behalf participate in the hearing, that we have not the *power* to compel the Warden to produce him so he could participate in the hearing and he was denied his petition for a writ of habeas corpus for that purpose.

In the absence of such power it became the duty of the Warden to determine whether he would obtain what, in effect, is an ex parte hearing, by holding from the court the body of his opposing litigant, or would afford Price due process by bringing him into court.

At the hearing we asked the Warden's attorney why Price was not present. He stated that the Warden had advised him that in *all* habeas corpus cases he was opposed to having the petitioner present at such hearings. What was said in our dissent to the opinion of January 8, 1947, applies *a fortiori* to the case as it developed at the hearing.

fraudulently done by persuasion of the prosecuting attorney could only have been learned after conviction and after the convicted man was in the penitentiary.[2]

This fair statement of the appellant's contention is followed by the court's complete and very damaging non sequitur with no support in any fact stated in the opinion or in the record here. It is that "On the face of his showing it is apparent he knew as much about the misconduct at the time it is said to have occurred as he knows now."

This is immediately followed by another non sequitur of the last quoted sentence. It is "Yet no reason or excuse is attempted to be advanced for his failure to set it up in one or the other of his prior petitions."

The appellant, denied hearing here, well may mediate bitterly in his cell: "Why pertinent that I did not give reason or excuse for stating the facts of the subornation of the testimony in a prior petition, if the record clearly shows that I knew about it when the testimony was changed and could have had my attorney prove it at the trial?"

For all we know, Price was not apprised of such action of the prosecuting attorney until long after the filing of any prior petition. It is on this that the court, in confusing terms, makes its constricting ruling. It is that "Where there have been repeated petitions with an apparent husbanding of grounds the onus may properly be cast on the applicant of satisfying the court that an abusive use is not being made of the writ."

This is confusing because the onus probandi concerns facts not the satisfactions of a court. The true statement of the court's criterion on the facts in issue here is "Where there have been repeated petitions with an apparent husbanding of grounds, the applicant has the burden of showing that a ground newly asserted was in fact previously unavailable or unknown to him."

That is to say, there is a presumption against the petitioner here, not an attorney, that if the time he acquired knowledge of the facts constituting the wrong is not stated in a second petition, he is deemed to have known them at the time he filed the first petition. There is no such presumption in any civil or criminal proceeding of which I have knowledge.

Certainly the creation and application of such a presumption against a non-lawyer petitioner is not such a disposition "as law and justice require" as provided in 28 U.S. C.A. § 461.

Having so ruled, this court then denies Price his right to go forward in the district court and establish his "burden of showing" such facts. It then sustains the dismissal of the petition without permitting its amendment to show when Price acquired such knowledge of the alleged subornation of perjury leading to his conviction.

True, the multiplicity of petitions in the District Court for the Northern District of California from ingenious and sometimes perjuring pleaders in Alcatraz prison may cause its judges to have a justifiable suspicion that this petition may be "just another."[3] However, that court well may protect itself by requiring an amendment to the petition stating when the knowledge of the facts was secured. It also could protect itself by a rule requiring that such petitions should state when the facts pleaded came to the knowledge of the petitioner.

Here the absent petitioner, not a lawyer, pleading in propria personam and in forma pauperis, has his petition dismissed with neither the right to sustain his "burden of showing" nor with the right to amend. A similar situation is where a sentence ad-

---

[2] It is only by such an allegation of the prosecuting attorney's wrongful acts that the case is brought within Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406.

[3] The Supreme Court reversed this court for sustaining the dismissal of a petition for the writ, though stating that it is *"True, petitioner's allegations in the circumstances of this case may tax credulity.* But in view of their specific na-

ture, their lack of any necessary relation to the other threats alleged, and the failure of respondent to deny or to account for his failure to deny them specifically, we cannot say that the issue was not one calling for a hearing within the principles laid down in Walker v. Johnston, [312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830]." Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 965, 86 L. Ed. 1302. (Emphasis supplied.)

judged is invalid on its face but the imprisoned man, not a lawyer, does not realize it. He files a petition on another ground. Under the instant decision he must remain imprisoned because in a second petition setting forth the judgment he has not stated that he did not realize its invalidity until after the first petition was filed.

Nothing in Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 warrants such a denial of justice. In the Wong Doo case the ground of the second petition was set up in a prior petition and the Supreme Court found, 265 U.S. at page 241, 44 S.Ct. 525 that the facts supporting it were "accessible all the time" to Wong Doo. Here the ground was not asserted in a prior petition and there is nothing in the record to show that at the prior time any of the facts regarding the prosecuting attorney's wrongful action were then known to Price, confined in a federal penitentiary.

Nor is there anything in the dictum in Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989, supporting such a treatment of a petition which for the first time sets forth a justifiable ground for a release of the prisoner. There Salinger's later petition merely repeated the ground of a prior one which, on appeal, had been held not valid. In that case, however, despite the prior decision of the appellate court, the Supreme Court did consider the merits and did not base its decision upon the decision on the prior petition.

The companion cases of Wong Doo and Salinger were decided in 1924. In the 23 years since, the Supreme Court decisions have made clear the limitations of these decisions—limitations well to be considered, though, as seen, these two cases are not applicable here.

Though ignored by this court, Price's brief points out that in the recent case of Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, the Supreme Court upheld Hawk's petition though it states 326 U.S. at page 272, 66 S.Ct. 116 it had denied two petitions for certiorari on Hawk's two other habeas corpus proceedings in which the same ground was asserted. A fortiori should we consider a petition stating a ground never before stated in any petition.

So also the court's opinion ignores the case of Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 966, 86 L.Ed. 1302, where the Salinger case is emphasized for its holding that "the principle of res judicata does not apply to a decision on habeas corpus." There this court was reversed and Waley's petition sustained, the opinion stating "The principle of res judicata does not apply to a decision on habeas corpus refusing to discharge a prisoner, Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L. Ed. 989. It does not appear that on petitioner's earlier application for a writ of coram nobis the same issue was raised as that now presented. The earlier application was denied for insufficiency upon its face and without a hearing. There is thus no basis for the holding of the district court that the denial is res judicata of the present petition."

Waley, of course, had full knowledge of the threats made to him when he brought his earlier proceeding. The fact that he reserved the contention for the later proceeding did not prevent its consideration by the Supreme Court.

Likewise in Robinson v. Johnston, 9 Cir., 118 F.2d 998, 1001, Healy, C. J., dissenting, this court refused to consider Robinson's petition for a writ of habeas corpus based upon his claimed insanity, because the same claim had been urged in a prior coram nobis proceeding and decided against him, he having first offered and then withdrawn the proof of his mental condition. We were reversed, 316 U.S. 649, 62 S.Ct. 1301, 86 L. Ed. 1732, on the authority of Waley v. Johnston, supra.

In the case Cochran v. Amrine, 153 Kan. 777, 113 P.2d 1048, a habeas corpus proceeding, the Kansas supreme court states, at page 1049, that Cochran unsuccessfully had filed four petitions, two in the federal court and two in the state courts. Despite the fact that the Kansas supreme court decision was on an appeal from the fifth denial of the writ, the United States Supreme Court granted certiorari, sustained Cochran's contention and reversed the decision. Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453

Nor does the court's opinion consider this court's decision in Johnston v. Wright, 9

Cir., 137 F.2d 914, 915, where, in sustaining Wright's contention, we state that the identical contention there made by Wright had been considered in three district court proceedings and disposed of adversely to him before it was decided favorably to him in a fourth petition to a circuit judge.

Surely it is a strange divergence from Johnston v. Wright where we ordered Wright released on his fourth petition for the writ, each asserting the same grounds, now to refuse to consider Price's petition on a ground never before asserted. Stranger yet to do so sub silentio.

Though not presented here, it is still a serious question whether an innocent man must be imprisoned or hung where his first petition asserts, unsuccessfully, what he considers his strongest claim and consciously reserves for a second petition another ground which, if considered, would free him. For instance, should a man imprisoned on a sentence for life, invalid on its face, spend the remainder of his days in the penitentiary if he "had access to" knowledge of its invalidity and nevertheless filed a first petition on another ground? Would it be the exercise of a "sound" or any permissible discretion for the district court to dismiss the petition on the grounds stated in the court's instant opinion? If it be beyond the court's discretion so to keep him imprisoned where the judgment is void on its face, does such discretion arise because he has been wrongfully convicted by perjury procured by the prosecution?

The bad situation arising from a burdensome infliction on some of our district courts of a flood of unwarranted petitions should find relief through Congress. Where the petition is perjured there should be a criminal prosecution. With the fascistic tendencies apparent in our American life, the remedy is not in undermining any of our civil liberties, particularly the right to habeas corpus, by bad law.

It may be argued that Price now may file a new petition alleging the fact that, while he knew at the trial of the change of testimony, he did not learn until after his last proceeding was filed that the prosecuting attorney had suborned the perjury to procure his conviction. Thus at the end of another two years in prison, while the federal courts are giving the "summary" disposition of a writ of habeas corpus required by 28 U.S.C.A. § 461, Price may be released.

The absurdity of the argument is patent. Under the rule here established, such a new petition must be denied because the fact of the late acquisition of the knowledge of such subornation was known to Price at the time of the filing of the petition we now dismiss.

The district court should be reversed because it at least erred in that it neither (a) permitted Price to go forward and prove that not until after he had filed his first petition had he learned the facts alleged as to the gross misconduct of the prosecuting officers, nor (b) permitted him to amend his petition to show when such knowledge was acquired.

STEPHENS, Circuit Judge (dissenting).

I am unable to subscribe to the majority opinion, because I think by it the holding in Swihart v. Johnston, 9 Cir., 150 F.2d 721, 722, is extended beyond its true limitations.

In the Swihart case we held that controlling weight in the consideration of a petition for the writ of habeas corpus may be given the fact that a former petition, based upon the same cause, had been filed, heard and decided. We did not hold that the court could refuse to consider a petition for the writ merely because a former petition had been adjudicated. No case, so far as I am aware, has ever gone further than the expression we used in the cited case, to wit, "One of the matters which may be considered and given controlling weight is a prior refusal to discharge on a like petition." This expression does not mean and should never be judicially extended to mean that because one petition had been heard and denied, a second petition, based upon different allegations, could or should be dismissed as a matter of course.

No more is stated in the cited case than that in the consideration of the second petition the instance of, and the facts connected with, the first petition may turn the scales

against the petitioner. And the instance of, and the facts connected with, the first petition, I apprehend, would be that the hearing upon the first petition had been a thorough and adequate trial upon issues again presented in the second petition or that the petitioner was perpetrating a fraud upon the court.

In the instant case the cause alleged by petitioner is entirely different from any heretofore alleged. If what petitioner now alleges is true, he was convicted upon perjured testimony suborned by the prosecuting attorney. It is entirely unlikely that such a monstrous charge has any truth in it, but such improbability does not authorize the court to brush it aside. Any number of circumstances may have prevented this new and different issue from being set up in the former petitions, and it must not be overlooked that one in prison, and longing for freedom is not always in a mental condition to act perfectly or even free to act as and when he desires to do so. It may be petitioner believed that the reasons he gave for his release in the former petitions were entirely sufficient and that he would never be put to the difficult task of proving the charges of the misconduct he now charges to the prosecuting officer. It may be that he has but recently obtained information which in his opinion will prove his charges. The possibilities are endless, and they should not be denied judicial investigation because all of them seem improbable.

It will be a very serious blow to the great writ if it is ever authoritatively decreed that one deprived of his liberty has but one shot for his freedom. This one shot must have everything; missing anything, and the legal right to show the injustice and illegality of the imprisonment is gone forever. The impact of such a holding cannot be exaggerated. A court should take steps to be sure that "an abusive use of habeas corpus" is present before it rules against the entertainment of the petition, remembering at all times that the basis of the writ is a right and not a privilege. Until Congress, after a thorough consideration of the subject, places a limitation upon the right to the writ of habeas corpus, courts should not decree such limitation.

It is my considered opinion that the pronouncement, without a hearing, of the judgment of dismissal in the instant case constitutes an abuse of discretion as a matter of law.