## BELLASKUS v. CROSSMAN.
### No. 11786.

Circuit Court of Appeals, Fifth Circuit.

Dec. 2, 1947.

· SIBLEY, Circuit Judge, dissenting.

Charles F. Tucker and Charles H. Sherman, Jr., both of Houston, Tex., for appellant.

Brian S. Odem, U. S. Atty., and Joseph W. Cash, Asst. U. S. Atty., both of Houston Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment discharging a writ of habeas corpus, which was issued upon a second petition by appellant, who is now in custody under an order of deportation to Greece, issued under Section 19 of the Immigration Act of 1917.[1]

It is admitted that the petitioner is an alien and that he entered the United States in 1909. The warrant for petitioner's deportation was issued, in 1935, after he had been found managing a dance and music hall and other places of amusement and resort habitually frequented by prostitutes. Subsequently, he was taken into custody, but until late in 1939 he was able to secure several delays. Meantime, World War II had commenced in Europe, and the petitioner was still in the United States. After being taken into custody for deportation in 1939, he began habeas corpus proceedings in the court below.[2] After a hearing, wherein counsel appeared with the petitioner, evidence was heard, and the full official Central Office Immigration Record was ex-

---

[1] 39 Stat. 874, c. 29, 8 U.S.C.A. § 155.

[2] The proceedings were had before different judges.

amined, the court below held that the petitioner had committed the acts as found by the immigration officials and that, as shown by their records, they carefully preserved all of his rights.[3]

The Immigration Service was unable to obtain a passport to Greece in 1939, and no effort was made to deport the petitioner to Greece during the years of occupation of that country by the Nazis. In early 1946, the immigration officials took the petitioner into custody for deportation, but their Central Office granted a stay for the purpose of consideration of a motion to reopen the case. Upon the denial of the motion and denial of a further stay, deportation was ordered. At this stage of the case, the present petition was filed, an order to show cause being entered. This order included a requirement that the record of the proceedings before the Immigration and Naturalization Service be produced, but it was not possible for such records to be produced on one day's notice, and they were not produced at the hearing. The Government's return to the show-cause order was a motion to dismiss the petition and an answer which set forth the regularity of the warrant and the lower court's previous order and opinion herein, to which answer copies of the warrant the order, and the opinion were exhibited.

The petitioner did not plead further, and he did not traverse the Government's return. This failure to traverse the return disposed of the petition, and would have disposed of it were it an original petition also, for when Bellaskus did not traverse the answer to the writ he admitted that he was held, as it stated, under a regular warrant for deportation after a fair and legal hearing. Crowley v. Christensen, 137 U.S. 86, 94, 11 S.Ct. 13, 34 L.Ed. 620; Brewster v. Villa, 5 Cir., 90 F.2d 853, 854; United States v. O'Brien, 7 Cir., 111 F.2d 232, 234.

Nevertheless, the petitioner contends that the lower court committed error in not requiring a second production before it of the record of the hearing before the immigration officials, and contends further that all the issues raised were not heard. At the hearing, the petitioner was relying on three points: (1) His counsel insisted that the is-

---

[3] Memorandum of December 4, 1939, by Kennerly, District Judge.

"A Warrant of Deportation having been issued by the Secretary of Labor October 25, 1935, for the deportation of Alexandesus Bellaskus, alias Alex Bell (for brevity called Petitioner) charging that: 'he has been found managing a music and dance hall and other place of amusements and resort, habitually frequented by prostitutes and where prostitutes gather' he petitions for the Writ of Habeas Corpus.

"The place is the Atlantic Cafe and Night Club, located on the corner of Congress and Chartress Streets in the City of Houston, Texas. In one room, there was a dance hall and place for the sale of beer, and in the other and adjoining room, a cafe or restaurant. There was a large double door between the rooms. That the place was a resort habitually frequented by prostitutes and where prostitutes gather is perfectly clear from the record. That Petitioner was there every day both in the dance hall and in the restaurant, aiding in carrying on the business is likewise clear.

"1. Petitioner claims that the record and the evidence which Petitioner brought before the Court, show he owned no interest in the dance hall, but only owned the restaurant or an interest in the restaurant. This was one of the issues before the Immigration Authorities. Petitioner's early statements do not support this view. His later statements—and his statements at this trial do support this view.

"An issue of fact was presented which has been decided adversely to Petitioner by the Immigration Authorities and which this Court may not review.

"2. Petitioner also claims that he did not have a fair trial before the Immigration Authorities. A careful examination of the record discloses that this is not true. He was represented by counsel, had a full hearing, and a careful examination of the record discloses that all his rights were carefully preserved.

"3. Petitioner also claims that the evidence is not sufficient to support the Warrant of Deportation, and that he, under the Law, cannot be deported upon the facts found by the Immigration Authorities. This view cannot be supported. See Lindsey v. Dobra, 5 Cir., 62 F.2d 116.

"From what has been said, it follows that the Writ of Habeas Corpus should be denied, and Petitioner remanded to the custody of the Immigration Authorities."

suance of the warrant was arbitrary, capricious, and constituted an abuse of discretion; (2) that the warrant having been outstanding 11 years was functus officio; and (3) that since there was a finding of the petitioner's birth in Turkey, there was no legal authority to deport him to Greece.

■ The trial court placed the burden on the petitioner to challenge the Government's answer, and refused to consider any points except (2), that the warrant had become invalid by the passage of time. That point is abandoned here by appellant. No citation of authority is necessary to uphold the prima facie validity of the warrant in the total absence of proof that the delay was the fault of the officials. It seems actually to have benefited the appellant in view of the numerous delays sought and obtained by him.

■ Petitioner's point (1) disposes of itself in the absence of any factual proof, and there was no offer of proof as to how or in what manner the abuse of discretion asserted came into being, nor what acts of the officials were arbitrary and capricious, nor how there was applied an erroneous construction of law.

■ The final point (3), that there was no authority to deport to Greece because of the finding of birth in Turkey, is one not open to judicial inquiry in the absence of a showing that the administrative agency having the legal responsibility of finding the facts has illegally done so. No suggestion has been made that the findings were illegally made. Under Section 156 of Title 8 U.S.C.A., the Congress recognized several factors in determining the place of destination of an alien on deportation. Birth is merely one of these factors. When the agency charged with the duty of finding the facts has done so, the place of destination among the optional places fixed by Congress is applied as a matter of law by the executive branch of the Government pursuant to the legislative command.

No reversible error appearing, the judgment is affirmed.

SIBLEY, Circuit Judge (dissenting).

When an alien is deported against his will, next to the question of his ejection from the United States, the most important one to him is the place to which he shall be sent. The statute fixes that place thus: "The deportation of aliens provided for in this chapter shall, at the option of the Attorney General, be to the country whence they came or to the foreign port at which such aliens embarked for the United States * * * or if such aliens are held by the country from which they entered the United States not to be subjects or citizens of such country, and such country refuses to permit their reentry, or imposes any condition upon permitting reentry, then to the country of which such aliens are subjects or citizens, or to the country in which they resided prior to entering the country from which they entered the United States". 8 U.S.C.A. § 156. The language is mandatory: "shall". The options are, 1. the country or port of departure for the United States; 2. if the country of departure disclaims the alien and blocks reentry, then the country of true citizenship; or 3. the country of last residence before entering the country of departure. It is not lawful to deport an alien to a country of which he is not now a citizen or subject and in which he has never resided and from which he did not depart to the United States. The question can be raised on habeas corpus, deserves serious consideration, and is to be answered by the political situation of the countries at the time of the hearing. Mensevich v. Tod, Commissioner, 264 U.S. 134, 44 S.Ct. 282, 68 L.Ed. 591.

This question was not decided by Judge Kennerly in the habeas corpus hearing before him in 1939, and should not have been refused a hearing in the present case when raised for the first time. The strict rules of res judicata do not apply to habeas corpus. Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 689; Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999. Indeed the political situation of Turkey and Greece have changed greatly since 1909 when this alien departed for the United States, and even since 1935 when this warrant for deportation issued.

The sworn application for the writ states that in the deportation it was found as a fact that applicant was born in Turkey, that he immigrated into the United States from

Turkey, and was a citizen and subject of Turkey, and alleged that he is not a citizen of Greece and has no relatives there, and has never been in Greece. The district judge did not order the writ to issue, and there was never a return to a writ to be traversed. There was only an unsworn answer to a show cause order and it made no denial of the facts just stated. The judge refused to have the deportation record produced, or to consider any question but whether by lapse of time the deportation warrant was stale. In this I think he erred. He was right in holding the order not stale, and in his discretion he could refuse to re-examine the questions decided by Judge Kennerly; but he should have enquired whether there was any lawful reason for sending Bellaskus to Greece where he was not born, is not a citizen or subject, and has never been. It is common knowledge that Greece is now in great want and turmoil, and is not a desirable place for an alien stranger to go.